SMITH and others *vs.* LOCKWOOD and WOOD.

A complaint must set forth *facts* by which the court can see that the plaintiffs have sustained or are threatened with a legal injury; or it is bad on demurrer. A general averment that the acts of the defendant are contrary to the statute, without setting forth in what manner, is not sufficient.

Where a new right, or the means of acquiring it, is conferred, and an adequate remedy for its invasion is given by the same statute, parties injured are confined to the statutory redress.

A public prohibitory statute, though passed chiefly for the protection of a class, still does not confer any individual rights. An infraction of such a statute is a wrong to the public, for which the people in their collective capacity alone are entitled to redress; unless the party aggrieved has sustained a special damage, peculiar to himself, and not in common with others. If the damage affect a class, it is general or common, and not *special.*

A court of equity will not interfere by injunction to put down a public nuisance which does not violate the private rights of property, but only contravenes the general policy. Nor will an injunction be granted to prevent the perpetration of an act prohibited by a public statute, because it might diminish the profits of a trade or business pursued by the applicant in common with others.

DEMURRER to complaint. The action was commenced under the statute of 1847, regulating state prison labor. Its object

was to restrain within statutory limits the manufacture of saws in the state prison at Sing Sing. The plaintiffs sued on their own behalf, as well as on behalf of all others, journeymen saw-makers, or saw-makers, having an interest in common with them, and who should come in and contribute to the expenses of the suit. The complaint alledged that the defendant Munson I. Lockwood was the agent of the state prison at Sing Sing; and that as such agent he had entered into a written contract with the defendant Cortland Wood for the making and manufacturing of steel saws, of various kinds and patterns, by a large number of the convicts within the said state prison, the chief supply of which articles, for the consumption of the state of New-York, was not imported from other countries or states, but, on the contrary, the chief supply of which articles, for the consumption of the state of New-York, for the last year or more, had been and still was, manufactured within the state itself. That the duration, exact terms, conditions, or limitations of such contract were unknown to the plaintiffs, and they were therefore unable to set them forth. That the larger number of convicts who had been and still were employed in the said state prison by the defendants, under and in pursuance of the said contract, did not learn or practice the mechanical art or trade of manufacturing saws, or any of the branches thereof, before being sentenced and sent to the said state prison, and that so far as the plaintiffs could ascertain, and as they believed and alledged the fact to be, no convict within the said state prison, working at any time under the said contract, learned or practised the said mechanical art or trade previous to his confinement therein. That the said mechanical art or trade had been introduced into the said state prison within the last year, and that the convicts who had been and still were employed under the said contract, had learned or practiced the said trade or art since the making of the said contract, and that so far as the plaintiffs could ascertain, and as they believed and charged the fact to be, no certificates of the clerks of the different courts in which the said convicts were convicted, showing that they had learned or practiced the said mechanical trade or art previous to their convictions, had been

or were delivered to the warden of the said state prison at the time the said convicts were delivered to him, pursuant to their respective sentences. That the plaintiffs in this action, Nathaniel S. Smith, William Ward, Richard Branch, John Andrews, and Henry R. Warner, were journeymen saw-makers, residing and doing business in the city of New-York, and lived by the daily prosecution of the mechanical art or trade of saw-making, that being their only means of obtaining a livelihood. That the business of saw-making was comparatively a new business within the state of New-York, it having been first actively pursued about thirteen years since, from which time it has been gradually growing and extending itself, until it not only produces, and had for the last year or more produced, sufficient saws to meet the wants and consumption of the state of New-York, but to admit of considerable exportations to other states and countries. That the trade or business was largely prosecuted in the city of New-York, and that it had drawn together in said city, (exclusive of other places in the state,) over one hundred and fifty journeymen saw-makers, who lived by the daily prosecution of that business or trade, besides over one hundred apprentices, who are now actively engaged in learning the said art or trade. That the saws manufactured in the state prison at Sing Sing come into competition in the mercantile market with those which were produced by the plaintiffs and others, journeymen saw-makers, legally pursuing the said art or trade in the city and state of New-York, thereby lowering the wages and seriously affecting the interests of the plaintiffs and others so pursuing the said art or trade. The plaintiffs therefore charged, that the said defendants, Munson I. Lockwood, agent as aforesaid, and Cortland Wood, at the time of the making of the said contract, combined and confederated together for the purpose of illegally teaching the said mechanical art or trade of saw-making to convicts confined in the said state prison at Sing Sing, and that since the execution of the said contract, still so combining and confederating together, they had illegally taught, and were still teaching to convicts therein, the said mechanical art or trade, and that they were pursuing the same in the said prison, contrary to the

statutes in such case made and provided. Therefore, the plaintiffs prayed that a provisional remedy might be granted to them, by an injunction order to be directed to the said defendants, Munson I. Lockwood, agent of the state prison, and Cortland Wood, enjoining and prohibiting them, either of them, or the successor in office of the said Munson I. Lockwood, agent, as aforesaid, or the agent or assignee of the said Cortland Wood, during the pendency of this action, or until the further order of this court, from suffering, permitting, allowing, commanding, or directing any convict who was then confined in said state prison at Sing Sing, or who might be hereafter and during that time sentenced to confinement therein, to work, labor, or be employed in or upon the making or manufacture, or in or upon the partial making or manufacture of any description of saws whatever, except it should appear by the certificate of the clerk of the court in which such convict was tried, that such convict had learned and practiced the mechanical art or trade of saw-making previous to his conviction and sentence thereto. And for further or other relief. And the plaintiffs further prayed for a final judgment· herein, which should order and direct the surrender and cancellation of the contract made between the said Munson I. Lockwood, agent of the state prison at Sing Sing, and the said Cortland Wood, and perpetually· enjoining the said Munson I. Lockwood, agent of the said state prison at Sing Sing, from entering into or making any similar contract with the said Cortland Wood, or with any other person or persons whatsoever: and that, in addition, the defendants might be adjudged to make to the plaintiffs compensation, in· damages, by reason of the premises, to the amount of $1000.

To this complaint the defendants demurred separately. The defendant Wood assigned the following causes of demurrer: 1. That the plaintiffs had no right to bring or maintain an action for themselves, or in behalf of others, jointly or severally, for or on account of any violations of the law of this state regulating the employment of the convicts in the state prison at Sing Sing, or for or on account of the teaching of trades to the said convicts, as alledged in their said complaint. 2. That the plaintiffs had

not averred or set forth in their complaint, that they, or either of them, had sustained any actual damage whatever, by diminution of wages, or otherwise, nor alledged sufficient facts to support their claim of damages. 3. That the plaintiffs did not show by their complaint what particular articles within the meaning of the 71st section of the act entitled "An act for the better regulation of the county and state prisons, and consolidating and amending the existing laws in relation thereto," passed Dec. 14, 1847, were or are manufactured by the defendant Wood, under the contract referred to in the plaintiffs' complaint, nor describe the same particularly, so that the said defendant could take any issue thereon as to the chief source of supply of such articles for the consumption of this state. 4. That the plaintiffs did not show or aver, that the defendant had, in any way or manner, sold or put into the market, or the consumption of this state, or used, or permitted others to use, any of the saws, of any description, manufactured by him under his alledged contract with the agent of the Sing Sing prison. 5. That the plaintiffs had not in and by their complaint alledged or pretended that any convict sentenced to imprisonment in the state prison at Sing Sing, since the first day of January, 1848, or the 14th day of December, 1847, had been permitted to work therein under the alledged contract between this defendant and the said agent, or at any mechanical trade pursued by or in the making of any articles manufactured for this defendant in the said prison. 6. That there was a misjoinder of parties, in this, that it did not appear by the said complaint that the plaintiffs were jointly interested in the recovery of the damages which they had demanded. 7. That there was a defect of parties in this, that the plaintiffs, in and by their complaint, alledged that other persons were interested with them who were not made parties, plaintiff or defendant, and did not alledge that they (the said plaintiffs) were trustees of an express trust, nor state any sufficient reasons for not making the persons aforesaid parties to the said action. 8. That the plaintiffs had not alledged any acts of the defendant Wood that were contrary to law, or which were not remediable in the mode provided by the statute creating the offenses and prohibit-

ing the acts of which the plaintiffs complained, nor that the plaintiffs could not have adequate relief by the ordinary remedies of the common law, and that they had not alledged sufficient facts to entitle them to a provisional remedy or equitable relief by injunction, as prayed for in their said complaint. 9. That the complaint did not state facts sufficient to constitute a cause of action.

The defendant Lockwood assigned the same causes of demurrer, and in addition, specified the following : That the plaintiffs' complaint did not show or aver, or pretend that the defendant entered into any such alledged or pretended contract, without being thereto authorized and directed by the inspector of said prison in charge, in due form of law. That the plaintiffs' complaint did not alledge or pretend that this defendant or the inspector or inspectors of said prison entered into any such alledged contract, knowing that the chief supply of the articles mentioned therein was manufactured in this state, nor that the said inspectors or this defendant did knowingly let or hire, or consent to the letting or hiring of the labor or services of any convict contrary to law, or did knowingly or willingly cause any convict to be employed at work prohibited by law, under or by virtue of the said alledged contract with Cortland Wood, referred to in the plaintiffs' complaint. That the plaintiffs did not, in their complaint, alledge or pretend that this defendant had, in any thing, done or suffered to be done, in relation to said contract by him, acted otherwise than in strict obedience to the orders, directions and authority of the inspectors of the said prison, and the rules and regulations ordained and prescribed by them for his government.

*John Graham*, for the plaintiffs

*Ralph Lockwood*, for the defendant Lockwood.

*E. R. Carpentier*, for the defendant Wood.

S. B. STRONG, J. The plaintiffs are journeymen saw-makers in the city of New-York, and have instituted this suit in behalf

of themselves and all others following their employment in this state. They alledge in their complaint that the defendant Lockwood has made a contract with the defendant Wood, for the employment of the convicts in the state prison at Sing Sing, of which Lockwood is the agent, in the business of manufacturing steel saws, contrary to the provisions of the act of December 14th, 1847, for the better regulation of the county and state prisons of the state; that at the time of making the contract, the defendants combined and confederated together for the purpose of illegally teaching the trade of saw-making to the convicts; that the defendants are now teaching such trade to the convicts, and that they are pursuing the same in the prison contrary to the statute, thereby lowering the wages and seriously affecting the interests of the plaintiffs and others pursuing the same trade. They ask for an injunction, and for a compensation in damages for the injuries which they have sustained by reason of such illegal conduct of the defendants.

The 71st section of the 2d title of the said act, provides that no convict who shall thereafter be sentenced to imprisonment in either of the state prisons, shall be permitted to work therein at any other mechanical trade than that which, as shall appear by the certificate of the clerk of the court in which he was convicted, (and which by the preceding section the clerks are directed to give,) such convict had learned and practiced previous to his conviction, except in the making or manufacture of articles for which the chief supply for the consumption of the state is imported from other countries or states. The 75th section of the same title enacts that any inspector, agent or warden of either of the state prisons, who shall knowingly let or hire, or consent to the letting or hiring of the labor or services of a convict, contrary to law, and any officer of either prison, who shall knowingly or willfully cause a convict to be employed at work prohibited by law, shall be deemed guilty of a misdemeanor, and shall on conviction be punished by fine in a sum not exceeding one thousand dollars, or by imprisonment in a county jail not exceeding one year, and by the 76th section it is made the duty of the attorney general, upon complaint and satisfactory inform-

ation that the provisions of the preceding section have been violated, to cause the offender to be prosecuted. These are the only provisions of the act which have any material bearing upon this controversy.

If the plaintiffs are entitled to any redress for their alledged grievances, it must be under the provisions of the act. They alledge no invasions of their rights at common law or by virtue of any other statute. The defendants had a right to make and pursue the contract in question, unless they were prohibited by the 71st section of the act. That section prohibits the employment of convicts in any trade different from that mentioned in the certificates of their conviction, who should thereafter be sentenced to imprisonment. There is no allegation in the complaint that the contract between the defendants included, or was designed to include, the labor or employment of any convict sentenced after the passage of the act. There are allegations that the convicts who have been and are employed under the contract did not learn or practice the art before their sentences of imprisonment, that the business has been introduced into the state prison within the last year, that the convicts who are employed under the contract have learned or practiced the art since such contract was made, and that no certificates of the clerks of the different courts, showing that such convicts had learned or practiced such art were delivered to the warden of the prison, and there is a general allegation that the defendants have taught the convicts, and are now employing them in the pursuit of such mechanical trade, contrary to the statute. The facts specifically alledged may all be true, and yet the defendants not have violated any of the provisions of the statute. The averment that they have acted contrary to the act, without setting forth in what manner, is not sufficient to entitle the plaintiffs to any relief or redress. The court must see by the facts set forth in the complaint, that the plaintiffs have sustained or are threatened with some legal injury. The objection is fatal to the complaint as it now stands.

But as, if that was the only difficulty in the plaintiffs' way, they would no doubt amend their complaint on terms, it is proper

Smith *v.* Lockwood.

that I should consider the other material points arising in the cause.

The provisions of the act to which I have referred are purely of a public character. They were designed to promote the interests of the state by securing a most meritorious class of our fellow citizens from injurious competition. Public statutes may undoubtedly have reference to individual rights or interests. They frequently grant additional security for the enjoyment of pre-existing rights, or confer new ones, or the power of obtaining them. Where the design is to give additional protection to a subsisting right, and a remedy is provided for its invasion, which is not necessarily exclusive of all others, it is considered as merely cumulative, and the party injured may resort to that, or to the means previously allowed, for redress. But where a new right, or the means of acquiring it, is conferred, and an adequate remedy for its invasion is given by the same statute, parties injured are confined to the statutory redress. When no remedy is given by the statute, in such cases, the party injured may resort to the means of redress given by the common law or any general statute in similar cases. 2 Burr 803

The statute in question is entirely prohibitory, and does not confer any individual rights. It is designed for the public good, and any infraction of it is a wrong to the public, for which the people in their collective capacity alone are entitled to redress. It is a principle of law, however, that where any one in the perpetration of a public wrong commits an injury upon another, peculiar to the injured party, in his individual capacity, and not simply as a member of the community, the party injured may sustain an action in his individual capacity for the damages which he may have sustained. This was always the rule in cases of misdemeanor, but it did not at common law extend to felonies, as the private wrong was merged in the felony. But by a provision of our new code, (§ 7,) when the violation of a right admits of both a civil and a criminal remedy, the right to prosecute the one is not merged in the other. Where the act complained of is purely a statutory wrong of a public character, a party aggrieved can only maintain an action where he sus-

tains a special damage peculiar to himself, and not in common with other members of the community with whom he has no joint personal interest. This rule is laid down in many cases, and is not, so far as I know, contradicted by any respectable authority.

In the case under consideration, the plaintiffs do not complain of any special damage peculiar to themselves as individuals. The alledged injury consists in "lowering the wages and seriously affecting the interests of the plaintiffs and *others pursuing the trade of saw-makers in the state.*" True, the damage is more serious to the class to which the plaintiffs belong than to the rest of the community; but so long as it affects the whole class, it is general and not special to the plaintiffs. Individuals cannot sustain an action under such circumstances. In *Lansing* v. *Smith and others*, (8 *Cowen*, 146,) an action was brought against the commissioners under the statute for erecting the Albany basin, for illegally constructing a bridge over a part of the Hudson river at Albany, by means of which the plaintiff was deprived of the profitable use of his dock, which was situated above the bridge. It appeared that the damage of which the plaintiff complained was common to himself and all the other proprietors of docks similarly situated. Judge Sutherland, in giving the opinion of the court, said, " it must be conceded that there is nothing in the plaintiff's case to distinguish it from that of every other owner of a wharf in the basin, and all the proprietors of docks above the temporary bridge have sustained an equal [he probably meant a *similar*] injury with the plaintiff in consequence of this erection. The injury, therefore, for which the plaintiff seeks remuneration is not peculiar to himself. It has been equally felt by a hundred others whose property is similarly situated." In another part of his opinion he says, " the legal character of a nuisance is not changed from public to private because its operation is more injurious to a particular individual, or class of individuals, than to the community at large." In *Butler* v. *Kent and others*, (19 *John.* 223,) a suit was instituted by a vendor of lottery tickets for damages sustained by him in the depreciation of such tickets by

Smith *v.* Lockwood.

means of the official misconduct of the defendants, who were the managers of the lottery. Judgment was given for the defendants on the ground that the injury complained of was common to all the lottery dealers. Chief Justice Spencer said, "the injury, if any, is common to all those who hold tickets in that particular lottery, and we see that in such case it belongs to the public only to avenge the injury." The plaintiffs failed in these cases, not because they had entitled the suits in their own behalf, and not for others similarly situated as well as for themselves, but because no action can be maintained for injuries common to any considerable portion of the community. The same objection exists in this case, and is fatal to the plaintiffs' claim for damages.

It has been supposed, however (and I see that the supposition has received the sanction of one of my brethren for whom I entertain the highest respect,) that the allegations in the complaint would, if proved, present a proper case for the interposition of this court by way of injunction. Injunctions are never granted to prevent the perpetration or continuance of a public wrong (not leading to the special injury of individuals) unless it constitutes a nuisance imminently dangerous to the public or some considerable portion of it. In *The Attorney General* v. *The Utica Insurance Company*, (2 *John. Ch. Rep.* 378,) Chancellor Kent decided that a court of equity had no jurisdiction of an offense against a public statute. He said very truly that the powers of injunction should be applied with the utmost caution. It is the strong arm of the court, and to render its operation benign and useful, it must be exercised with great caution, and when necessity requires it. It is an extremely rare case, and may be considered if it ever happened, as an anomaly for a court of equity to interfere at all, and much less preliminarily by injunction to put down a public nuisance which did not violate the private rights of property, but only contravened the general policy. In *The Mayor of Hudson* v. *Thorne*, (7 *Paige*, 261,) Chancellor Walworth said that a court of equity does not interfere to enforce the penal laws of the state, by injunction, unless the act sought to be restrained is a nuisance. Besides, when

Smith *v.* Lockwood.

an application is made to prevent a public nuisance merely from apprehended danger to the community, it must be in the name or on behalf of the people. An injunction to prevent a public nuisance is never granted on the application of a private individual, unless the apprehended nuisance would be specially dangerous to himself or injurious to his property. I have looked over the cases cited on the argument, and many others, but have not found an instance where an injunction was issued on the application of an individual to prevent the perpetration of an act prohibited by a public statute, merely because it might diminish the profits of a trade or business pursued by the applicant in common with a considerable class of his fellow-citizens, although the statute may have been designed principally for the protection of the interests of such class. The statute in this case furnishes an adequate remedy for the public wrong, and if it does not indemnify those who pursue any mechanical trade for the incidental injury which they as a class may sustain, it is because human means cannot furnish a remedy for every injury, and it is better that some minute evils should go unredressed than that a class of remedies should be adopted which would be productive of more harm than benefit.

Limits to the powers of injunction have been prescribed by the wise and good men who have presided in the courts of equity in this state and in the mother country, and I am not inclined to go beyond them.

The complaint in this case does not in my opinion set forth enough to entitle the plaintiffs to damages for the alledged unlawful conduct of the defendants, or to an injunction to prevent its continuance. Consequently there must be judgment for the defendants on the demurrers severally interposed by them.

[KINGS SPECIAL TERM, June 7, 1852. *S. B. Strong*, Justice.]