By the Court,
Monell, J.
An action does not lie at common law against a municipal corporation, to recover for injuries to person or property caused by a mob. This was conceded by counsel, and is well settled.
The legislature of this state, in 1855, (Sess. L. 1855, p. 800, ch. 428,) enacted that, “ Whenever any building or other real or personal property shall be destroyed or injured, in consequence of any mob or riot, the city or county in which such property was situated shall be liable to an action by or in behalf of the party whose property was thus destroyed or injured, for the damages sustained by reason thereof.”
The act provides that actions may be brought and conducted in the same manner that other actions may be prosecuted by law, and directs that, “ Whenever any final judgment shall be recovered against any such city or county, in any such action, the treasurer of such city or county shall, upon the production and filing in his office a certified copy of the judgment roll, pay the amount of such judgment to the party or *238 parties entitled thereto, and charge the amount thus paid to said city or county.”
The complaint alleges the unlawful assemblage, on the 14th day of July, 1863, of a mob of disorderly and riotous persons, and the destruction of the plaintiff’s property by the mob; and contains a statement of facts sufficient to constitute a cause of action against the defendants, if the act referred to can be sustained as a constitutional enactment.
The demurrer was sustained at the special term upon two grounds—-first, that the act is in conflict with the constitution of this state, which declares that no person shall be deprived of life, liberty, or property, without due process of law ; and, second, that it impairs the obligation of a contract within the prohibition of the federal constitution.
I will first consider the provision in our state constitution.
The liability created by the act in question is in derogation of the common law, and was involuntarily imposed upon the defendants. The state, in the exercise of its sovereign power, holds the city responsible, without its consent, and without previous process of law, for the consequences of acts not committed by them, or by their authority or permission, but over which they could exercise no control, and which they had not the physical means to avert.
The decision at special term rested upon the ground that this legislative imposition of liability upon the city, by its consequences of a judgment for damages sustained by a citizen to his property, and the duty enjoined upon the treasurer to pay, does in effect and in fact deprive the defendants of their property, without due process of law, and is within the constitutional prohibition. Process of law does not mean legislative enactment, but condemnation by judicial decree ; and the legislature cannot usurp the right and the power of the courts to determine every question concerning life, liberty, or property.
It is a principle, fundamental with our government, that the citizen shall be protected in the enjoyment of the blessings of life, liberty, and property. Every man in surrendering his personal independence'to the state sovereignty by yielding his *239 support to the government, and by his obedience to its laws, has the right to expect reciprocal protection.
Hence, since we ceased to be colonies of Great Britain, it has always been a provision of the organic law of the state that none of its members shall be disfranchised, or deprived of any of his rights or privileges, unless by the law of the land or the judgment of his peers.
If the consequences of a judgment recovered under the act in question, were to deprive the corporation of the city of New York of any of its “property," as a private body, or artificial person, or to subject any of its property to the lien of such judgment, or to render it liable to be sold, then the act, in my opinion, would be clearly unconstitutional and void.
No property is taken by the terms of the act. The taking, if any there be, is only some compulsion to pay upon an involuntary liability. Money being property, the forced duty to pay money, as effectually deprives the corporation of its property, as if its real estate, or rents, or franchises were in terms to be seized.
The corporation of the city of -New York, represented by the mayor, aldermen, and commonalty, is the owner of both real and personal property. This property may ordinarily, by. process of law, be subjected to the payment of any debt which the corporation, as an artificial person, may lawfully contract. In this respect a municipal corporation is regarded as a natural person, capable of making contracts, of sueing and being sued, and may be compelled, in like manner, to discharge its obligations.
If, therefore, an execution could be issued upon a judgment recovered under the riot act, and levied upon any of the “ property” of the corporation, which it has obtained under its charters, or by subsequent purchase, and be sold in satisfaction of the judgment; or, if the city is compelled to pay its money to discharge these claims, then I am of opinion that the act would be exposed to the constitutional objection.
But the terms of the act forbid any such conclusion.
Without such a statute, a sufferer by a riot is remediless. *240 The statute is therefore highly remedial; should be liberally construed, and must be taken entire. A part cannot be enjoyed and the residue rejected.
The exigencies which originated the act in question, were the not unfrequent unlawful assemblages'of disorderly persons, suddenly and unexpectedly overpowering the ordinary constituted authorities, and in defiance of law, wantonly destroying-life and property. During such periods, the citizen was powerless to sheild himself, and looked in vain for help to the protecting arm of the law. His property was seized and swept to destruction, and his life imperilled or lost.
As under our free institutions, private interest must yield to the public good, so sometimes, in the due dispensation and distribution of justice, private wrongs, which the government was powerless to avert, may be redressed by removing the burden from the individual, and placing it upon the whole community or some large portion of it, such as might be culpable in not providing means to resist the assault, or most interested in defeating similar ones.
It seems to me that the legislature was influenced by these considerations in passing the act before us. They recognized the right of the citizen to demand of the people indemnity, where they had failed to shield from injury; and that the. legislature, in the exercise of its power to levy taxes, designed that the people of the county or city whose authorities had failed to provide means of protection, should assume the burden of .indemnity. It was not the intention of. the legislature, by imposing- a liability upon a county or city, to do more than to designate a body politic, representing the inhabitants of a district, who might be proceeded against to obtain redress for losses which it was proper should be borne by them. Except that the people cannot be sued, the liability could as well have been imposed directly upon them, instead of their representatives. Hence the act designates the city or county as the party to be liable. It is in effect a mere mode of assessing the damages occasioned by disorderly and riotous persons unlawfully assembled, with a provision for their payment by the *241 treasurer of the city or county, and enabling the city or county, as a municipal or corporate body representing the people within its limits, to contest the amount of the recovery.
The fire act of 1806, which authorized the mayor to direct the pulling down of buildings to arrest the progress of a fire, (Valentines Laws, 450, § 8,) provided for an assessment of the damages to the owner; and after confirmation of the assessment by the mayor’s court, directs the amount to be paid by the city. The riot act does no more than to require an assessment of damages with a direction to the city treasurer to pay. And it does not follow, that because the city or county is designated by the act as the body to be proceeded against in ascertaining the amount of damages, that their municipal or corporate property is to be taken; or that it was intended that the damages when put into the form of a judgment, should be a lien upon such property. ■ I cannot, therefore, believe that the legislature designed to give any other or greater force or effect to such judgments, than is given in the act itself; or to prescribe or allow any other mode of satisfaction than the means therein pointed out. If it had been the design to create a lien upon the corporate property, or subject it to levy and sale, a direction to the treasurer to pay was wholly unnecessary. Such a lien, and a right to enforce it by sale, would have been incident to the judgment itself.
But the statute which fixes the liability also provides for the satisfaction of the judgment. It directs the treasurer to pay and to charge the amount to the city or county made liable.
As I have said, the plaintiff has no right of action and no remedy, except under the statute, (Almy v. Harris, 5 John. 175,) and if the statute does not furnish a complete remedy, he is without any.
In Calking v. Baldwin, (4 Wend. 667,) an act of the legislature authorized B. to erect a dam across the Seneca river, and empowered any three judges of the common pleas, to assess the damages of the owners of lands, which sum so assessed *242 should be taken as a full compensation for such damages. Marcy, J. says : “ The legislature have prescribed the mode in which the damages shall be ascertained, and in that mode only can they properly seek compensation.”
So, under the gaming act, which gave an action of “ debt,’’ it was held that the statutory remedy must be'pursued in form as well as in substance. (McKeon v. Caherty, 3 Wend. 494.) In that case the statute created a right which did not exist before, and prescribed a remedy.
It is provided by statute, (1 R. S. 315, §§ 13, 25,) that fines imposed by a regimental or battalion court-martial are. to be collected by a warrant issued by the president, and it was held in The People v. Hazard, (4 Hill, 207,) they could be collected in no other way.
The chancellor, in Renwick v. Morris, (7 Hill, 575,) says, where a new right is given, and a specific relief given for the violation of such right, the remedy is confined to that given by statute. So, in Smith v. Lockwood, (13 Barb. 217,) it is said, when a new right or the means of acquiring it, are conferred, and an adequate remedy for its invasion is given by the same statute, parties injured are confined to the statutory redress.
If the statute under consideration provided no specific mode of payment, then, undoubtedly, the ordinary common law-incidents necessary to render the judgment effectual would be inferred, although not mentioned in the statute. And even where the provision in a statute designed to give effect to the power, is in such general terms as to render the design doubtful or uncertain, it should receive a liberal construction towards effectuating the power. Bouton v. City of Brooklyn, (15 Barb. 375;) and Strong, J. in Dudley v. Mayhew, (3 Comst. 15,) says : “ The principle that when a statute confers a right, and prescribes adequate means for protecting it, the proprietor is confined to the statutory remedy, is conformable to the manifest intention of the legislature in such cases, and has therefore been properly settled in the courts of England and in this country.”
*243 That the legislature did not intend to give any other effect to their judgments than is contained in the act, gains additional force from the duty of the court in construing their acts, even in doubtful cases, to presume that the legislature did not intend to take any individual or private property against a constitutional prohibition. (French v. Kirkland, 1 Paige, 117.)
The corporate capacity of “ counties ” is prescribed by statute. (1 R. S. 364.) They are declared to be bodies corporate; they may sue and be sued, and may purchase and hold real and personal property; but their powers as a body politic can only be exercised by the boards of supervisors.
The liability of “ counties,” under the act in question, is the same as that of “ cities,” and judgments must be satisfied in the same manner. An» execution upon a judgment against a county, or against the supervisors thereof, cannot be issued, nor can the corporate property be sold. (2 R. S. 497, § 107.) So far, therefore, as' regards counties, which are protected from executions, in all cases, the direction to the treasurer to pay was quite unnecessary. In cities, however, which enjoy no such immunity, it was necessary to guard against the disturbance of any corporate rights of property. 4-nd I think the legislature has done so, by providing for payment out of the city treasury (which treasury, under the authority conferred by law, from time to time upon the city, to levy taxes upon the taxable property of the citizens of the city, may be replenished,) and by not providing any other mode of payment,
If I am right in my conclusions that a judgment recovered under the act creates no lien upon property ; that no property of the corporation can be subjected to its payment and that the burden of paying falls upon the tax payers of the city ; then jt follows, I tfiink, that the act is not unconstitutional, unless levying a tax to reimburse the treasury is a taking of property within the meaning of section 6 of article 1 of the constitution.
*244 The power of taxation, both in cities and counties, is conferred by the legislature in either general or special laws.
General laws have been enacted giving authority to boards of supervisors to raise money by tax. (1 R. S. 366, § 4. Laws 1849, ch. 194, § 34.)
In this city no general authority exists. But the -legislature may, from time to time, authorize the levying of a tax to reimburse the treasury, or to provide for the payment of the expenses and liabilities of the city. An act empowering the city to raise money by tax, is annually passed by the legislature.
The power of the legislature to impose the burden of taxation upon the citizens cannot, I think, at this day be questioned. It is one of the duties which the citizen owes to the state, to contribute to its support; and the state, in virtue of the right of eminent domain, may compel' the contribution. The compensation which the citizen receives, or is supposed to receive, is in the protection of the government, the security of life and liberty, and the enjoyment of property.
All right of property as regards its mode of enjoyment, burdens, alienations, transmission, or sacrifice, for the public good, depend upon positive municipal regulations of the sovereign power. The constitution only intended to forbid the seizure and appropriation of private property for public uses, when it would thereby remain the private property of the community, as a body politic or corporate, although enjoyed by the public. , Taxation is not so much the exercise of the right of eminent domain as a sacrifice to public wants or necessities. It is not the resumption of property by the state, compensating the owner for its loss, but the appropriating it at once to some public purpose. The state, or its officers, are only invested momentarily or temporarily, in order to discharge obligations incurred for a public necessity. The public necessity, to which the payment of a tax is a sacrifice, must be determined alone by the legislature ; the elements of judgment, as to its existence or quantum, are so minute and various, that a judicial body cannot take cognizance of them.
The limitation of the region of taxation to raise funds for *245 a particular purpose does not affect the constitutional right any more than the regulation of the persons or property to be taxed. Either the legislature is invested with sovereign, unlimited, unquestionable power, or every individual, and every kind of property, is to be taxed alike, or according to the benefits to be received ; and courts cannot determine whether a tax is unconstitutional by reason of the persons to be taxed or exempted.
The power to tax for local as well as governmental purposes, has always been upheld by the courts as being necessary to the due administration of the government, and as imposing no new or improper burden upon the citizen.
In Thomas v. Leland, (24 Wend. 65,) the question arosunder an act of the legislature, levying a tax upon property in Utica, to pay the cost of a change of terminus of the Chenango canal. Neither the city of Utica, nor the inhabitants thereof, were liable for such costs. The court held the act to be constitutional. There the act subjected the taxable property of U tica to the payment of a debt, and shifted the burden from individuals to the tax payers.
In Morris v. The People, (3 Denio, 381,) the act sought to be invalidated, declared that the salaries of the judges of the court of sessions were county charges, and directed the supervisors to pay ; and it was held, that although the appointment of Judge Lynch, one of the session judges, was illegal, the act directing the payment of his salary was valid. Neither the city nor county could have been made liable except under the act.
In the People v. Mayor, &c. of Brooklyn, (4 Comst. 419,) the whole subject of taxation for local purposes received the careful consideration of the court. Judge Buggies, in that case, says (p. 422 :) “ The right of taxation, and the right of eminent domain, rest substantially on the same foundation. Compensation is made when private property is taken in either way. Money is property. Taxation takes it for public use, and the tax payer receives, or is supposed to receive, his just compensation in the protection which the government affords *246 to his life, liberty, and property, and the increase of the value of his possessions, by the use to which the government applies the money raised by the tax.” The assessment, in that case, was for a local improvement, the benefits of which were enjoyed by a few only of the citizens of Brooklyn. But the court upheld the assessment, on the ground that an assessment, being a tax, it was not in conflict with the constitution to confine the tax to any prescribed limits.
In Bank of Rome v. Village of Rome, (18 N. Y. Rep. 38,) an act was sustained which authorized the defendants to subscribe to the capital stock of a railroad company, and to issue their corporate bonds therefor.
In Brewster v. the City of Syracuse, (19 N. Y. Rep. 116,) J. and W. Ley had constructed a sewer under a contract with the city of Syracuse, and had been paid in full. Afterwards, an act was passed directing the common council of Syracuse to assess and collect $600, and to pay it to the Leys, as an additional compensation. The Leys, before the act, had no claim whatever against the city, and the charter prohibited the city from paying any thing above the contract price. But the court say, “ The expense was imposed on that part of the citizens interested in the improvements by virtue of the discretionary power of the legislature to impose the public burdens on those who in its judgment ought to bear them.”
I will refer on this point to but one case more, that of The town of Guilford v. The Supervisors of Chenango Co. (13 N. Y. Rep. 143.) In that case it was attempted to restrain the supervisors from levying and collecting from the taxable property of the citizens of a town, a sum awarded to Cornell & Clark, under an act of the legislature, and for which, except under, the act, the town was in no way liable. Judge Denio there says, (p. 149 :) “ The legislature is not confined in its appropriation of the public moneys, or of the sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the state. It can thus recognize claims founded in equity and justice, in the largest sense of these terms, or in gratitude or charity. Independently of express *247 constitutional restrictions, it can make appropriations of money whenever the public well-being requires or will be promoted by it; and it is the judge of what is for the public good. It can, moreover, under the power to levy taxes, apportion the public burdens among all the tax-paying citizens of the state, or among those of a particular section or political division. It is well settled that the authority to raise money by the exercise of the taxing power is not in conflict with the constitutional provisions protecting private property from seizure.”
The only conceivable difference between the cases to which I have referred and the question I am considering, is, that the riot act does not authorize the levying of a tax to place funds in the treasury to pay the judgments. That difference may affect the efficiency of the law ; may deprive the plaintiff of the means of obtaining satisfaction of his judgment until further legislation is had, but it does not render the law invalid. It rather sustains it in the view taken by the learned justice below.
My conclusion upon this branch of the case is, that the act does not allow judgments recovered under it, to be collected in any other manner -than is ■ prescribed by the act; that such judgments have not the attributes of ordinary judgments, and that none of the corporate property of the city can be seized or made liable for their payment. The burden of paying them falls upon the tax-payers of the city and not upon the city. The act, therefore, does not conflict with any provisions of the constitution of this state.
The second ground is, that the effect of the act is to impair the obligation of a contract.
I agree with the learned judge, at special term, that the charter of the city is so far a contract between the state and the corporation, that its right to hold and enjoy its property cannot be impaired or destroyed by subsequent legislation.
The constitution does not exempt charters from legislative control or interference whenever, upon principles of law, such control or interference would be valid. Their recognition does not impair the power to alter, amend, or modify, so long as no *248 grant of property, or franchises, coupled with a right of property, is taken from them. Nor does the state lose the right of making laws concerning .chartered corporations, so long as they remain publici juris. The grant is therefore subject to remedial legislation, and amenable to general laws. And as. an illustration of this principle, I may observe that the charter of the city of New York has repeatedly been subjected to change, both by the colonial government, and by our state legislature.
I have endeavored to show that the act before us does not deprive the city of any of its property, and that the power to tax is a constitutional power. If I have succeeded in establishing those propositions, then- it necessarily follows, that no vested right of the city has been disturbed, nor has the obligation of any contract been impaired.
In the Charles River Bridge case, (11 Peters, 420,) the right of the legislature to interfere and take away a vested right, was clearly and distinctly recognized and decided. There the emoluments of a toll-bridge had been enjoyed, under a special charter, for more than forty years ; yet the legislature chartered a rival company, with corporate rights and powers injurious to those of the old company. The right was admitted to be vested in the old company, but it was not doubted that the legislature could take it away.
The Dartmouth College case, (4 Wheat. 519) is relied on as an authority that the legislature cannot interfere with vested rights. But it will be seen, that the distinction between public and private corporations is marked with emphasis by the eminent judges who delivered opinions in that case. The extent of that decision is, that an eleemosynary corporation, founded by private contributions, for the distribution of a general charity, is not an instrument of government, whose officers are public officers, but a private corporation, whose charter is a contract between the donors, trustees, and the government, founded on the consideration of public benefit to be derived from the corporation, which cannot be altered, amended, or modified without the consent of the corporation.
The corporation of the city of New York is a public corpo *249 ration, (2 Kent’s Com. 305 ; People v. Morris, 13 Wend. 325 ; Purdy v. People, 4 Hill, 384,) deriving its corporate rights, first from the crown of Great Britain, and since, from the recognition of those rights by our state constitutions. Yet no one, I think, can doubt that the legislature can at pleasure change or suspend the political or governmental powers of the city (for these are not vested rights as against the state, and may therefore he abrogated by the legislature), and may alter or amend any of the provisions of its charter, so long as there is no deprivation of or interference with her vested rights of property.
This power of the legislature over charters was recently fully discussed and considered in the Court of Appeals, in the Chenango Bridge Co. v. the Binghamton Bridge Co., (26 How. Pr. 124, 297,) where the power is fully recognized.
The English statutes (13 Ed. I, and 27 and 28 Eliz.) giving remedies for injuries caused by a riot, to which we were referred, furnish no aid in determining the constitutional question arising under ours. Parliament is the highest law-making pdwer of • Great Britain, and it can conflict with nothing. Our legislature is limited and circumscribed by a higher law, which they, as well as the courts, must obey.
The question before us was directly involved in the case of Abbott v. Supervisors of Richmond Co., (11 Abbott, 207.) The learned judge who decided that case, and whose opinions are always entitled to great weight, sustained the act, in a well reasoned opinion, which it seems to me is supported in principle and by authority. Especially by the terse and direct annunciation of Mr. Senator Verplanck, 1840, in Stone v. the Mayor, &c. (25 Wend. 181,) who says : “ The legislature might with perfect justice, if sound policy was thought to require it, make our towns or counties, severally responsible for damages hereafter arising from robbery within them, or from public tumults, on the principle of the English riot act.”
I have thus given this question the careful examination which its importance deserves. I have cast aside all those presumptions which go to sustain an act until its invalidity *250 plainly appears ; and I have looked attentively into every part of it, tracing its probable and. even possible effects upon the city, with a jealous regard for its corporate rights, to see if I could find any power improperly exercised by the legislature, and I have found none,
We have nothing to do with either the wisdom, policy, or justice of the law, Those questions were with the legislature, not with us.
My conclusion is, that the act does not conflict with any provision in the state or federal constitutions, and is a valid law.
The judgment of the special term should be reversed, with costs, and leave given to the defendants to withdraw the demurrer, and to answer on payment of costs,
Garvin, J. concurred,