EMPIRE CITY SUBWAY COMPANY (LIMITED), Appellant, *v.* BROADWAY AND SEVENTH AVENUE RAILROAD COMPANY and Another, Respondents.

*Electrical subways in New York city — not an exclusive right — who may sue for the violation of a public statute — right of a street railroad company to maintain a subway — basis for an extra allowance.*

<table><tr><td>87</td><td>279</td></tr><tr><td>87</td><td>619</td></tr><tr><td>87</td><td>279</td></tr><tr><td>3ap</td><td>21</td></tr><tr><td>87</td><td>279</td></tr><tr><td>17ap266</td><td></td></tr><tr><td>87</td><td>279</td></tr><tr><td>32ap472</td><td></td></tr><tr><td>87</td><td>279</td></tr><tr><td>159a 555</td><td></td></tr></table>

As a rule neither an individual nor a private corporation can maintain an equitable action to restrain the violation of a statute enacted for the protection of the public unless it appears that an injury will be done to the person or property of the plaintiff by the violation of the statute.

No exclusive right to maintain subways and conduits for electrical conductors in streets of the city of New York has been acquired by the Empire City Subway Company of the city of New York, either by statute or by contract with the city authorities.

A street surface railroad company lawfully using a cable for motive power in said city, and which as a condition of such use is under obligation to the Railroad Commission of the State of New York to use every provision that ingenuity can suggest to operate the cable with safety, particularly in the form of grip and in the system of signaling to the central house to stop the engines in case of accident, may lawfully construct upon its roadbed, and use an iron pipe containing electrical wires for use in communicating between its power house and its signal boxes intelligence relating to the operation of the road, and in order to stop the cable in case of an accident upon its line.

Where a private corporation brings an action to restrain a street railroad company from maintaining such a conduit, and to restrain it from using any electrical conductor not placed in the subways of the private corporation, and proof is made that the corporation charges $700 per mile for the use of such conductors as the railroad company requires, and that the value of the subway, the right to maintain which is in dispute, is $60,000, a sufficient basis is laid for an extra allowance.

APPEAL by the plaintiff, the Empire City Subway Company (Limited), from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 9th day of October, 1894, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 2d day of October, 1894, granting to the defendants an extra allowance.

This action was begun July 11, 1893, to enjoin the defendants from maintaining a conduit for the reception and operation of a telegraphic and telephonic conductor on the line of the defendants' road and to restrain them from using any electrical conductor not placed in the plaintiff's subways and conduits.

The defendants were incorporated under chapter 252 of the Laws of 1884 for the purpose of constructing, maintaining and operating surface railroads in certain streets of the city of New York. The Broadway and Seventh Avenue Railroad Company owns the road extending from South ferry through Whitehall street, Broadway and Seventh avenue to Central Park, at the intersection of that avenue and Fifty-ninth street.

Formerly the Broadway and Seventh Avenue road was operated with horses, but, by chapter 531 of the Laws of 1889, it was authorized, upon obtaining certain consents, to move its cars by a cable and make such changes in its road and the bed thereof as should be necessary so to operate its line. Afterwards the consents of the owners of more than one-half in value of the property on this line were obtained that the corporation might substitute a cable for horse power, and, November 12, 1889, the common council of the city consented that the corporation might operate the road by a cable, on terms and conditions agreed on, which were expressed in a preamble and resolutions adopted on that day and approved by the mayor November 13, 1889.

By chapter 259 of the Laws of 1890, the aforesaid acts of the authorities of the city were validated and confirmed.

On the 13th of May, 1890, the roads owned by the Broadway and Seventh Avenue Railroad Company were leased to the Houston, West Street and Pavonia Ferry Railroad Company, since which date the leased lines have been operated by the lessee.

On the 31st of July, 1890, the Board of Railroad Commissioners of this State approved of the proposed change of power and of the terms and conditions agreed to between the city and the corporation and imposed certain other conditions which were expressed in their determination on file in the office of said board, among which is the following:

" The counsel of the company agreed that every provision that ingenuity could suggest would be adopted to operate the cable with safety to the traveling public, particularly in the form of *grip, and system of signaling to the central house to stop the engines in case of accident.*"

Pursuant to the authority so obtained, cable power was substituted for horse power for propelling the cars. To effect the change, a central or power house was erected, where power was generated and applied to the cable, and a subway constructed in the roadbed for the cable, and an iron pipe, two and one-half inches in diameter, was laid, wherein were placed electrical wires for the purpose of transmitting signals between the power house and signal boxes placed along the line and about 600 feet apart. These wires are used solely for communicating between the power house and the various signal boxes intelligence relating to the operation of the road, and especially for the purpose of stopping the movement of the cable in case of an accident on the line.

Prior to July, 1886, the Consolidated Telegraphic and Electrical Subway Company was incorporated under the laws of this State for the purpose of building and maintaining subways in the city of New York and renting space in such ways to the owners of electrical conductors. In July, 1886, and in April, 1887, the board of commissioners of electrical subways entered into contracts with the Consolidated Telegraphic and Electrical Subway Company by which this corporation was granted the right to construct subways in accordance with plans thereafter to be agreed on, manage and operate the same, and charge and receive compensation for the use of space in such subways. By chapter 716 of the Laws of 1887, the board of electrical control in the city of New York was created and invested with the power previously conferred upon the board of commissioners of electrical subways in said city, and by the 6th sec-

tion of the act, the contracts of July, 1886, and of April 1887, were ratified and confirmed.

On the 26th of April, 1890, the Empire City Subway Company, Limited (the plaintiff), was incorporated, pursuant to chapter 611 of the Laws of 1875, and the acts amendatory thereof and supplemental thereto, for the purpose of constructing, maintaining and operating electrical conductors, subways and conduits, and to lease space in the subways and conduits so constructed to persons and corporations having the right to operate electrical conductors in this city.

In December, 1890, the Consolidated Telegraphic and Electrical Subway Company, with the consent of the city, conveyed to the plaintiff all subways and conduits for telegraphic and telephonic conductors and for the conductors of the Edison Electric Illuminating Company of New York. May 15, 1891, the board of electrical control and the plaintiff entered into a contract by which the latter agreed to construct, equip, maintain and operate subways, conduits and ducts for telegraphic and telephonic conductors, and for low-tension electrical light and power conductors of the Edison Electric Illuminating Company in certain streets and avenues in the city of New York. By the fourth article of this contract it is provided: "This contract to be without prejudice to the right of the parties of the first part (the city authorities) to enter into such other, further or different contracts as shall be necessary to carry out the intent and purpose of chapter 716, Laws of 1887." The fifteenth article of this contract contains this provision: "Nothing in this contract shall be construed as granting to the party of the second part (the plaintiff) any exclusive privileges, immunity or franchise whatsoever."

Pursuant to the statutes and contracts referred to the plaintiff has constructed and maintained subways and conduits for electrical conductors in the streets occupied by the defendants' roads, and is engaged in renting space to the owners of such conductors.

*Melville Egleston* and *Edward Lauterbach*, for the appellant.

*Elihu Root*, for the respondents.

FOLLETT, J.:

It is a general rule, subject to few exceptions, that an individual cannot maintain a suit in equity to restrain the violation of a statute

enacted for the protection of the public, unless he shows that he has been or will be injured in person or property by the violation of the statute. It must be shown that the plaintiff has sustained or will sustain special damage. The same rule is applicable to private corporations, and this plaintiff is not within any of the exceptions to the rule. A concession that the defendants have violated the subway statutes, and that the city or the commissioners of electrical control might maintain an action to restrain the defendants from continuing such violation would not constitute a cause of action in favor of the plaintiff, unless it could be shown that some right of property had been injured by the violation. ( *Woodruff* v. *Paddock*, 130 N. Y. 618; *Smith* v. *Lockwood*, 13 Barb. 209.) The authorities holding that an action to restrain the defendants could be maintained by the People or by the municipal authorities are not in point and need not be considered. The only theory upon which this action can be maintained is that the plaintiff has acquired an exclusive right to maintain subways and conduits for electrical conductors in certain streets in this city, and that all persons and corporations using such conductors must place them in their subways and pay rent for the privilege. Such a right can be acquired only by contract or by statute. No contractual relations have ever existed between the litigants, and the plaintiff has acquired no right as against the defendants by virtue of any contract with them. This brings us to the question whether the plaintiff has acquired by statute or by grant from the city, pursuant to some statute, an exclusive right to maintain subways and conduits for electrical conductors.

Our attention has not been called to any statute conferring an exclusive franchise on the plaintiff or on its grantor, and upon an examination of the statutes relating to the subject we find no provision from which it can be inferred that the Legislature intended to confer an exclusive right upon any corporation, nor do we find any statute authorizing the authorities of the city or the Board of Railroad Commissioners of the State to grant such a franchise. But apart from the question of authority it is manifest that the authorities of the city and the Board of Railroad Commissioners did not grant or intend to grant to this plaintiff an exclusive right to construct, maintain and operate subways and conduits in which all electrical conductors must be placed. By the fifteenth article of the

contract of May 15, 1891, entered into with this plaintiff, it is expressly provided : " Nothing in this contract shall be construed as granting to the party of the second part (the plaintiff) any exclusive privileges, immunity or franchise whatsoever." By the fourth article of the same contract it is provided : " This contract to be without prejudice to the right of the parties of the first part (the city authorities) to enter into such other, further or different contracts as shall be necessary to carry out the intent and purpose of chapter 716, Laws of 1887." Under these limited grants there is no ground upon which it can be successfully contended that this plaintiff has any exclusive right to maintain subways and conduits for electrical conductors.

The Board of Railroad Commissioners, in approving of the proposed change of power for the operation of the defendants' road, expressly provided that it should adopt and use a " system of signaling to the central house to stop the engines in case of accident." There is no provision in the statutes which makes it obligatory upon the defendants to place their wires forming a part of their signal system in the conduits owned by the plaintiff, nor is there any provision preventing the defendants from constructing and using conduits of their own. If the construction of the subway statutes contended for by the plaintiff is to prevail it would be impossible for a surface road to be operated on many of the streets by electricity, as authorized by chapter 531 of the Laws of 1889, unless its conductors were placed in the plaintiff's subways.

On dismissing the complaint the court granted an extra allowance of $750, which is at the rate of five per cent on $15,000. Upon the application for this allowance it was shown that the annual rent charged by the plaintiff for the use of such conductors as are used by the defendants would be $700 per mile, and that the value of the subway, the right to maintain which was in controversy, was at least $60,000. These facts are not disputed, and they are quite sufficient to sustain the allowance granted.

The judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment and order affirmed, with costs.