## *The People *vs.* Three of the Judges of Suffolk County. [ *249 ]

An order of *commissioners of highways* of a town in one of the *counties of Long-Island*, to clos a road on condition that proper.*swing-gates* were made and supported, made on a petition for the *discontinuance* of the road, supported by the oaths of 12 freeholders that the road had become useless and unnecessary, is a *void order:* the commissioners not being authorized to make the order upon such application.

So, an order of commissioners subsequently made *directing the gates and fence to be removed*, and that the road should be of the *width* it had previous to being enclosed, is equally void: the first order being a nullity, required no act on the part of the commissioners to vacate it.

So, an order of three judges, to whom an *appeal* was made from the second order, *reversing* so much thereof as directed the road to be restored to its *original width*, instead of ordering it to be opened *only three rods* wide, (the original width being *from seven to nine rods*,) was also held to be void; the judges in such case having no jurisdiction.

The remedy of parties aggrieved under the second order of the commissioners, was not by *appeal* to the judges, but by impeaching it collaterally, or by *certiorari* directed to the commissioners.

The papers in this case were entitled, *The Commissioners of Highways of the town of Southampton*, v. *The Judges of Suffolk County;* it seems, they should have been entitled *The People* v. *Three of the Judges of Suffolk County*.

CERTIORARI. The commissioners of the town of *Southampton*, in the year 1833, on the petition of three individuals to have a certain road *discontinued* and *closed up :* which petition was supported by the *oaths* of twelve freeholders that the road had become *useless* and *unnecessary* as a public highway, made an order allowing the *petitioners* to close the road, provided good and easy swing gates were made and supported at the cost and charge of the petitioners : the commissioners declaring the highway to be for the use of the public as a *passing road*. The road was of the width of *from seven to nine rods.* On the first day of May, 1838, the commissioners of highways of *Southampton*, for the time being, made an order whereby (after reciting the order of 1833 in respect to the road above referred to,) and that application had been made to them by sundry freeholders of the town, that

CASES IN THE SUPREME COURT

the road might be made an *open road*, and that as such, it was [ *250 ] necessary for the public convenience, *directed the *gates and fence to be removed*, so that the highway be opened and unobstructed, and that the breadth of the road should be as it was before it was enclosed. On the 17th July, 1838, two of the petitioners for the order of 1833, appealed to three of the judges of Suffolk, from the order of 1st May, 1838, praying a reversal of the latter order, or at least of so much thereof, as directed the road to be opened to the width it had, previous to its being closed, instead of limiting its width to *three rods*. In pursuance of this appeal, the judges met and viewed the premises, and after hearing the proofs and allegations of the parties, made an order, that so much of the order of 1st May, as directed the road to be opened *to the breadth it was of*, before it was enclosed, instead of ordering it to be opened three rods wide, only, be reversed. A *certiorari* was issued to the judges, commanding them to send up the proceedings and on the coming in of the return, a motion was made to quash the order of the judges, on the ground that they had not *jurisdiction* under the highway laws relative to the counties on Long-Island, viz: the counties of Suffolk, Kings and Queens.

*S. S. Gardiner*, for plaintiffs in error.

*A. T. Rose*, for the defendants in error.

*By the Court*, COWEN, J. The order of 1833 was not made under the 93d section of the act regulating highways, &c. in the counties of Suffolk, Queens and Kings. 3 *R. S.* 243, 255, 2d ed. *Sess. Laws of* 1830, *ch.* 56, *p.* 42. That section authorizes the commissioners, where a highway leads to any public landing, mill or meadow, through any person's land, to consent in writing that such person may hang good easy swinging gates on such highway, and keep the same in repair at his or her cost and charge. The application was not for a written consent ; it was by three persons, not calling themselves owners of the land through which the road ran, and with them were joined twelve sworn freeholders, all soliciting a *discon-* [ *251 ] *tinuance* of the *road. Nor does it any where appear in the proceedings that the road led to any public landing, mill or meadow. On the contrary, the application was under and in the language of the 64th section for a *discontinuance* of the old road, on the ground that it had become useless and unnecessary. All that the commissioners had power to do was to consider and decide upon that application. They stated in their order that they had, on the application as being one to *close* or *shut* up the road, viewed the premises, and *ordered* and allowed it *to be closed, provided good, easy swing gates be made and supported*, &c. The order does not fol.

low the statute. It is loose in describing the object sought by the application, and neither ordered the road to be continued or discontinued. Instead of that, it ordered the petitioners to close the road in a qualified manner, by erecting gates—the road still to be used by the public.

In considering this proceeding, we can look to the order only and the application to which it refers; and the best consideration I have been enabled to bestow upon it, has led me to think it was merely void. Under the 64th section, the commissioners had no power except to *consider* and *decide* upon the *application*, i. e. simply to adjudge that the road should be *discontinued*, or that it should not. Had they stopped with saying it should be *closed*, we might possibly have holden the order equivalent to an adjudication that the road should be discontinued. We might have regarded the order as a substantial mode of granting the application to which it referred. We might have gone upon the intention, though it is always better for judicial officers executing powers specifically conferred by a statute, to follow its words. Here there is no room, however, to speculate on the meaning. The order declares that they did not mean to *discontinue* the road, but sought to bring the case under the 93d section; and the main question debated by learned counsel is, whether it was under that or the 64th section. I think it was authorized by neither; that therefore the road still continued open, and might have been travelled as it was before. This conclusion will be seen to accord with the following authorities. *Davison* v. *Gill*, 1 *East*, 64. *The King* v. *Kenyon*, 9 *Dowl. & Ryl.* 694; 6    [ *252 ] *Barn. & Cress.* 640, *S. C. The King* v. *Crewe*, 3 *Dowl. & Ryl.* 6. *The same* v. *The Justices of Kent*, 1 *Barn. & Cress.* 168, *being S. C. with that in* 3 *Dowl. & Ryl. The King* v. *The Justices of Somersetshire*, 8 *Dowl. &. Ryl.* 733; 5 *Barn. & Cress.* 316, *S. C.*

Then came the order of the first of May, 1838. This expressly recited the former order of 1833, as one intended to *enclose* the road by *hanging easy swinging gates*, &c. and *leaving a passage through.* That was according to the true intent; and the last accordingly concludes, by ordering that the *said gates and fence be removed, so that the said highway be opened and unobstructed, and of the same breadth it was before enclosed.* Of course, this order too was merely void. It could have no operation; for it professed to order a thing which the law had already done; to open a road which was already open.

Then from this mere nullity, an appeal is instituted to the judges, of which I think they could have no cognizance in any view. If it were a proceeding under section 93, to remove gates which had ceased to be proper, then it is conceded that no appeal lay; that the only section giving an appeal (§ 66) does not cover the consent to erect or direction to remove gates under the 93d section. On the other hand, not being an order which the com-

missioners had power to make under any other section, an appeal was equally inapplicable, Suppose the effect of the order of 1833, were to *discontinue*, and that of May, 1838, were intended to *lay out* a road over the ground which had reverted to the owners in virtue of the first order : no consent of the owners is recited in the last, nor any petition of freeholders, as required by the 47th section.

An appeal to three judges does not lie from a determination which is void for want of jurisdiction. The original order being *coram non judice* and void, is no more the subject of such an appeal than would be a judgment rendered by the commissioners in a civil action. An excess of jurisdiction is correctable by *certiorari* only. On an appeal, want of juris-
[ *253 ] diction in the court below is equally a want of *it in the appellate court. Suppose a justice of the peace were to try and decide an action of ejectment : would the common pleas have power to review the proceeding on appeal ? Clearly the whole would be void. Being out of the statute, the only direct proceeding for redress would be by certiorari. For this there would be no strict necessity, because the judgment might be regarded as a nullity, and impeached collaterally. Still this court would perform what is the main office of a certiorari, the keeping of inferior magistrates within the compass of their power. We should, therefore, reverse the judgment of the magistrate. We might have reversed the order of the commissioners to remove the gates as an unwarrantable assumption of power. The case of *The King* v. *The Justices of Somersetshire*, 8 *Dowl. & Ryl.* 733. 5 *Barn. & Cress.* 316, *S. C.* is an instance. *Vid.* a notice of this case in 2 *Chit. Gen. Pr.* 220, and in *Woolr. on Ways*, 187. I mention that case, because it was a question arising on an order professing to be under a highway act. The petty sessions had taken original cognizance of a surveyor's accounts, whereas their powers were appellate only. The K. B. said the whole proceeding was *coram non judice ;* and therefore quashed the order, though the statute gave an appeal and expressly forbade a certiorari in all cases arising under it. The books are studded with cases of certiorari grounded on excess of jurisdiction, in divers departments of the law. The writ here is in nature of a *special quo warranto*, to ascertain by what authority a particular judicial act is done. The writ goes on the assumption, that powers have been usurped ; and the proceeding is, in England, always considered as at the suit of the king. It is so entitled and should here be entitled *The people* against the *magistrates*.

The three judges being entirely destitute of jurisdiction in either of the views which I have taken, it follows that this certiorari was properly brought. Indeed the public has a right to complain that a real injury was attempted in that part of the judges' order which seeks to narrow the road.

The people and individuals have a right to insist, that all the questions under the act shall first be heard in *due form by the com-          [ 254 ]
missioners, being there presented in their true character, to the
end that it may be seen whether orders are within the statute. If they are not, or if they be not within the section allowing an appeal, the judges have no power of review ; and especially are they without power to act as a court of original jurisdiction by modifying an order which is void. That having been attempted in this case, the judges exceeded their jurisdiction ; the proceeding in question was *coram non judice*, and their order must be quashed.

Order of the judges of Suffolk county quashed.