Hitchcock, J.
The record shows, that' this case was submitted to the Court upon -an issue in fact, which issue, after *143 hearing the evidence, the Court found in favor of the defendant. There is, it is true, a bill of exceptions in the record, but it does not appear from that bill of exceptions, that there was any question of law raised upon the trial; that there was any objection to any part of the testimony, but all was submitted to the Court, the parties waiving a jury. There is nothing to show that the Court made any one of the decisions claimed in the assignment of error as being erroneous, except that the Court rendered judgment for the defendant, instead of rendering judgment for the plaintiff. The ground upon which that judgment was rendered, no where appears. If it was wrong, being either against law or evidence, the course of the plaintiff was plain. He should have moved for a new trial. Under such circumstances, we have uniformly refused to reverse judgments, holding that the finding of the Court upon a matter of fact, could no more be reviewed by writ of error, than could the verdict of a jury.
The case might be left here, but as it has been so elaborately and cogently argued, we are willing to depart from our usual practice, and consider it as if it had come before us on motion for a new trial. But considering it in .that light, it is proper to say, that the bill of exceptions, with the exhibits attached, does not disclose all the evidence which was exhibited on the trial.
The exhibits, as they are called, are, in reality, but extracts from that evidence. The record books of the auditor of the county were in evidence. This is shown by the bill of exceptions. But the copies or exhibits are merely extracts from those books, or- certificates to show what they contain. In truth, some of these documents, as they aré now presented, would have been incompetent evidence.
The first question raised by the assignment of errors is, whether, from the testimony before the Court, there was sufficient evidence to show that the Auditor of Hamilton County had power to sell the land in controversy in the way and manner he did.
*144 It must be remembered, that this land had been forfeited for the nonpayment of taxes — whether properly or not, is not the question — and was intended- to be sold as such forfeited land. Now, what was necessary to be done that the county auditor might have power to sell such lands ? It is not sufficient, that the lands had been forfeited. A right to sell did not immediately follow upon the forfeiture. The act of March 14, 1831, (Swan’s Stat. 927,) “ to provide for the sale of such lands,” makes several provisions upon this subject. The first part of the act has reference to lands which had been previously forfeited. In the third section, the Auditor of State is required to transmit to the several county auditors, lists of lands which had then been forfeited for the nonpayment of taxes in their respective counties, said lists to be certified and signed by the Auditor of' State, and to have thereto affixed his seal of office. This having been done, the respective county auditors are required, after having complied with the law as to advertising, &c., to sell the lands in the list contained, unless the taxes shall have been paid, &c. The fifth section of the act has reference to subsequent forfeitures. It requires the 'Auditor of State, annually, after the year 1831, to enter in a book, provided for that purpose, all the lands which should thereafter become forfeited, and once in two years to make out a list of such forfeited lands and forward the same to the respective county auditors, and these latter are required to proceed and sell the same in the mode prescribed in the law.
It is apparent, from this law, that the authority of a county auditor to sell forfeited land is derived from this list, thus transmitted to him by the Auditor of State. As well might a sheriff, without execution, sell lands to satisfy a judgment, as a county auditor undertake to sell without this list. The act of 14th March, 1842, (40 Ohio Laws, 4,) referred to by' plaintiff’s counsel, although amendatory to the act of 1831, does not make any change in this respect.
In what manner is this list to be made out ? Here, it must be remembered, that there is a difference made in the law be *145 tween delinquent and forfeited lands. Lands which are charged with a tax upon the duplicate, and which tax is not paid within the year, are said to be delinquent, and the amount of delinquencies are returned to the Auditor of State, to enable him to make settlement with the county treasurers. The lands, however, are entered upon the duplicate of the next succeeding year, charged with the tax, interest and penalty of the year when delinquent, together with the tax of the current year. If these are not paid within, the time limited by law, the land is offered for sale at public auction, and if not sold for want of bidders, is said to be forfeited, and -these forfeited lands, or a list of them, are returned to the Auditor of State, who, as we have already seen, under the law of 1831, is bound to record them in a book to be by him kept in his office for that purpose. The lands thus forfeited are not, while in that situation, placed upon the county duplicate for taxation; but at, the times required by law, the auditor transmits a list of these lands, or such of them as have not been redeemed, to the respective county auditors, charged with the amount of taxes for the nonpayment of which they were forfeited, together with the taxes which shall have accrued thereafter.
Now, to the question as to the manner- in which the list of forfeited land is to be made. The statute itself answers the question. The third section of the act, already referred to, regulating the sale of forfeited lands, provides: “ that the Au- ‘ ditor of State, at the time he transmits the county duplicate ‘ for the year 1831 to the several county auditors, shall also c transmit to each county auditor a list of the forfeited lands ‘ lying in such county, which list shall set forth the name or ‘ names of the person or persons to whom such lands stand c charged with taxes, the amount due thereon for each year, in- ‘ eluding the year 1831, and for what years, and shall certify c and sign said list and affix thereto the seal of his office Here we are informed what this list is to contain, with an express provision, that it shall be certified and signed, and verified by the official seal of the officer.
*146 It seems to be admitted by plaintiff’s counsel that this formality was necessary as to the lands which were forfeited previous to 1831; but it is strongly denied that it'was necessary as to any subsequent forfeitures. And this argument is based upon the fact, that it is not. expressly enacted that the list of such lands shall be verified by the official signature and seal of the auditor. It is true, that in the 5th section of the act (Swan’s Slat. 928) which has reference to land subsequently to be forfeited, although it is provided that the auditor shall, “ once in two years, make out a list of such forfeited lands, and forward the same to the several county auditors,” it is not expressly said that such list shall be certified, signed and sealed by the auditor. But it is at least reasonable to suppose, that the Legislature having once, in the same act, made this express provision, .deemed it unnecessary to repeat the identical words in every clause of the statute where this list of forfeited lands was treated of. At least we shall so understand that. body upon this subject, until some reason shall be assigned why a list of lands, forfeited before 1831, should be thus certified, signed and sealed, while similar lists of lands forfeited subsequently to that period, should not require such verification. The same remark will apply to the act of 1842, which is merely amendatory to the act of 1831.
But if neither of these acts had required this list to be certified, signed and sealed by the Auditor of State, we apprehend that it must have been so done, before a county auditor w'ould be authorized to sell. The act of January 31, 1831, “ prescribing the duties of the Auditor, Treasurer, and Secretary of State,” in the 3d section prescribes, “ that the auditor £ shall keep a seal, with the device of, ‘The Seal for the ‘ Auditor of Ohio,’ and all official copies taken from the ‘ records, or other documents in his office, shall be under said £ seal, and shall be certified and signed by the auditor.” To provide against contingencies, it is enacted in the 22d section of the same act, ££ that the Auditor of State may appoint a £ chief clerk, whose appointment shall be evidenced by a cerc tificate thereof, under the official seal of the auditor, and shall *147 ‘ continue during the pleasure of the auditor.” And in the 24th section, “ that in case of the absence or inability of the { auditor, the chief clerk shall do and perform the several du- ‘ ties required by the auditor.”
It is said, however, by counsel, that these provisions of the law do not bear upon this case, because this list is merely a list of forfeited lands, while only copies of records and other documents in his office are required to be under the hand and official seal of the auditor. But how is this list made out? As we have already, seen, it is the. duty of the auditor to keep a book, in which are recorded all forfeited lands; and if such lands are not redeemed, as they may be, he copies from this book a list of those remaining, which is called the list of forfeited lands. It is literally a copy from the records in his office, and as such, must be verified in the manner pointed out by the law.
Now the question-arises, whether there was evidence before the Court on the trial of the case under consideration, that previous to the sale of the land in controversy, such list as the law requires, had been transmitted to the auditor of Hamilton county; or, more properly speaking, was there' evidence to satisfy the Court that no such list, verified as the law directs, had been transmitted. The plaintiff having introduced his deed, which was admitted as prima facie evidence, of title, the burden of proof was thrown upon the defendant to show that the land was sold without authority of law. For this purpose the book of records of the auditor’s office of Hamilton county was produced. In that book was found the letter marked as copy B in the bill of exceptions. It is as follows:
“AUDITOR OF STATE’S OFFICE,
Columbus, Ohio, June 5,1843.
“ Auditor of Hamilton County:
“You will carefully examine the foregoing list, and strike from it all such lands as you may know to be erroneously forfeited, taking oare that none escape the duplicate of taxation. You will then proceed to advertise and sell the remainder., according to the original act for the sale of forfeited lands, and the amendatory act passed February 15,1842, &'c..
“JOHN BROUGH, Auditor of State.
« By J. B. Thomas,”
*148 It is apparent from this document, that it was annexed to a list called a list of forfeited land, but it was not such a verification of that list as the law required. It was not even signed by the auditor, but by J. B. Thomas. And who is J. B. Thomas ? Plaintiff’s counsel answer, the deputy of the Auditor of State; and the Auditor of State signed by his deputy. By what authority ? It is replied, by the authority which every public officer has to act by deputy. I know that some public officers may act by deputy, such as sheriffs, clerks, &c.; but I have yet to learn that the Auditor of State of Ohio can act by any other authority than the one prescribed by law: that is, the chief clerk in his office. Thomas, however, does not sign as deputy, nor as chief clerk. ■ This instrument is not only without the signature of the auditor, but it is not verified by his official seal, nor is it therein certified that the list to which it is attached, is correct. It is defective, and would no more authorize the county auditor to sell the land contained in the list, than a letter written by a clerk of a court, and directed to a sheriff, informing him that a judgment had been rendered in a certain case, would authorize that sheriff to levy upon and sell the lands of a judgment debtor.
But it is said that- it does not appear from the record but that there might have been the requisite certificate. The records of the auditor of the county were before the Court. The question agitated was, whether the list of forfeited lands was properly authenticated. It is strange, indeed, that if there was any proper certificate, it was not at that time discovered by the astute counsel of the plaintiff. Strange that it was not made part of the bill of exceptions. There was not in fact any such certificate. The letter before recited was the only document contained in the record, which was claimed, in connection with the list to which it was attached, as being sufficient to authorize the county auditor to sell. The Court, hearing the case upon the circuit, thought otherwise, and held that the authority was not sufficient. In so deciding, this Court are of opinion there was no error. .
*149 The next error complained of is, that the, Court decided that the description of the lot upon the duplicate was defective qr insufficient. - ■
■ ;The description is as follows: “ Thomas Smith’s heirs; 30 ‘ feet b. Chesnut and Eliz. sts.; value, $210; tax for 1841, ‘$5.25.”
This was the description of the land upon the duplicate of 1841, the year in which thd land was returned delinquent. It was entered upon the duplicate of 1842 by a similar descrip-* tion. The taxes not being paid, the land was offered for sale, and not being sold, was returned to the Auditor of State as forfeited. ,.
It is admitted by plaintiff’s counsel, that, according to numerous decisions of this Court, heretofore made upon this subject, this description is defective; but' it is claimed that these decisions are all wrong, and that this Court have been led into error by following the decisions of the Supreme Court of the United States, in the case of Stead’s Executors v. Course; Cranch’s Rep. 412; and the opinion of Judge Marshall, in that cáse, has been commented upon with no little severity. It may be that counsel is right, and that this Court, and the Supreme Court of the United States, are all wrong. But we generally feel that we are pretty well fortified if our decisions are sustained by the authority of the highest court in the Union.
Whether, as a matter of policy, the strictness with which tax sales, have been scrutinized, has been most conducive to the public good, is perhaps questionable. But if this Court has been too rigid in this respect, the Legislature can easily apply a proper remedy; and many of the arguments of plaintiff’s counsel would be' much more applicable untó a legislative body than to a judicial tribunal. Where a principle of law has been established by a long course of judicial decisions, it should not be changed fór light and trivial reasons. It does not so much matter what the law is, as that it should be well understood. A change of the laws by the Legislature can do but little harm, as their acts are only prospective in their operation; but a *150 change of, decisions by this Court interferes with previously acquired rights. Our decisions, in this respect, have a retro spective operation.
But, aside from the decisions of this Court, is the description of the land, as entered upon the duplicate, sufficient? The law requires a “ pertinent description of the property so as ‘ to identify the same.” The description of this land is as follows : “ Thomas Smith’s heirs; 30 feet, between Chesnut and ‘ Elizabeth streets; value,” &c. The number of the lot is not given. It is not stated whether it is an entire lot, or a part of the lot. It does not appear whether it is thirty feet front or thirty feet square. And if thirty feet front, it is not stated upon what street it fronts. There is, in fact, nothing in the description by which the land can be identified. . It is said, however, that it has been identified by a surveyor; ■ and so' it appears from -the deed given in evidence. The deed purports to convey to the lessor of the plaintiff, “ the following lot in ‘ Cincinnati, as per survey, beginning on the west side of Wesc tern Row, fifty-five feet south of Chesnut street; thence, ! southwardly with Western Row, thirty feet for the front of ‘ the lot, and extending back one hundred feet, more or less.” This description is well enough; but it is entirely different from that in the duplicate. It shows, however, that there was more than thirty feet front upon Western Row, between Chesnut and Elizabeth streets, and I know of no law which would justify the Auditor in conveying this particular thirty feet. In fact, I see no reason why a surveyor should have been called at all. The land sold did not purport to be a part of a lot or tract, but an entire lot, and it was all sold; and, such being the circumstances, should have been conveyed substantially as described. The mode of rendering a thing certain which was before uncertain, adopted in this case, we do not well comprehend. That mode was to examine the records of the county; and if, from those records, it was found .that Th.omas Smith had any land in Cincinnati, to consider that as the land sold, regardless of the description in the duplicate.
*151 Another error assigned, is, that the Court decided' that the sale was void, because made on the 21st day, and not on the second Monday of December.
The record does not show that any such decision was made, nor is it within the recollection of the Judges who held the Court, that any such decision was rrtade. The point was argued, but the actual decision of the Court, so far as the law is concerned, was based upon the opinion, that the description of the land upon the duplicate was vague, uncertain, indefinite and defective; and that the county auditor had no authority to make the sale. Upon the point raised by the third error assigned, we therefore express no opinion.
The last error assigned, is, that the Court rendered judgment for the defendant, when it should have been for the plaintiff. There could be no error in this. The Court having found the issue joined between the parties for the defendant, it followed, as a matter of course, that judgment should be rendered in his favor, unless some motion had been interposed, which there was not, for a new trial, or in arrest of judgment.
The record in this case shows that the list of forfeited lands in Hamilton county, contained no less than 1200 tracts, lots and parcels of land, which were sold in 1843; and this circumstance has been urged' upon the consideration of the Court, as a reason why the authority to sell should not be very closely scrutinized. It is matter of regret, it is true, that in consequence of the neglect or mistake of a public officer, these sales should all be defective. But it must be remembered, that the purchasers are not without remedy. The law has secured to them a lien upon the land, until their purchase money is restored to them. All they can possibly lose, is the profits of a favorable bargain.
Counsel for plaintiff supposes that the 4th section of the act of March 2d, 1846, for the protection of purchasers at tax and judicial sales, has a bearing upon this case. The 4th section of that act provides, that whenever lands have been, or shall thereafter be sold for taxes, the purchaser may recover posses *152 sion by action of forcible detainer, and that the evidence of the 0f f[ie purchaser or his assignee to recover, shall not be impeached or set aside by evidence of any informality or irregularity in levying the tax, or in any of the proceedings previous to such sale. 44 Ohio Laws, 114.
This particular section of the statute has reference to proceedings in forcible entry and detainer, and there is nothing in it which requires that its principles should be extended to other cases. This is not a proceeding of that kind, and, of course, this statute has nothing to do with this case.
Upon full consideration of the whole case, this Court is of opinion that there was nothing erroneous in the judgment of the Supreme Court of Hamilton county, and that judgment is affirmed.

Judgment Affirmed.