Donahue, J.
The principal question presented by the record in these cases, and the one common to both, is the question of the jurisdiction of the court of appeals to hear and determine a contest of an election of common pleas and superior judges.
Section 5137, General Code, as ¿mended (103 O. L., 423), specifically confers upon the court of appeals exclusive, original jurisdiction in the contest of election of common pleas and superior judges, and provides that any elector of the city, county or subdivision may contest the election of any judge by taking an appeal from the finding and decision of the canvassing board which finds and declares the result of the election of such judge to the court of appeals of the county in which the contestee resides. Section 5138, General Code, provides that “The appeal shall be in the form of a petition, addressed to the court, in which shall be set forth in brief and plain terms that such appeal is taken, by whom and upon what grounds the election is con *105 tested.” In these particulars and the further provisions as to notice of appeal and service of a copy of the petition upon contestee, the contestor in each of these cases has fully complied. If these sections of the statutes are constitutional, then the court of appeals has jurisdiction to hear and determine a contest of election of common pleas and superior court judges.
It is claimed on behalf of the contestees that the jurisdiction of the court of appeals is defined and limited by Section 6 of Article IV of the Constitution; that the general assembly of Ohio is without authority to enlarge such jurisdiction, and that even if the general assembly has authority to confer jurisdiction upon the court of appeals in matters judicial, the power to hear and determine election contests is not a judicial power, within the.meaning of Article IV of the Constitution, and the legislative branch of our state government cannot assign to the judicial branch any duty other than those that are properly judicial, to be performed in a judicial manner.
Section 6 of Article IV of the Constitution, as amended September 3, 1912, provides that “The courts of appeals shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procedendo, and appellate jurisdiction in the trial of chancery cases, and, to review, affirm, modify, or reverse the judgments of the courts of common pleas, superior courts and other courts of record within the district as may be provided by law.”
It is clear from this provision of the consti *106 tution that, in so far as judicial powers are concerned, the court of appeals obtains all its jurisdiction, both original and appellate, directly from the constitution itself. The general assembly has no power to extend or limit its jurisdiction, but is limited solely to the power to provide by law for the exercise by that court of the jurisdiction conferred upon it by the constitution.
That elections belong to the political branch of the government, and that any authority conferred by the general assembly of Ohio under Section 21 of Article II of the Constitution to try contested elections is not judicial power within the meaning of Section 1 of Article IV of the Constitution, which vests-the judicial-power of the state in the courts, is no longer an open question in Ohio. (Link v. Karb, Mayor, 89 Ohio St., 326; The State v. Harmon, 31 Ohio St., 250.) It follows, therefore, that if the general assembly has no authority, under the provisions of Section 6 of Article IV of the Constitution, to confer judicial power upon the court of appeals in matters properly judicial, it certainly could have no authority, under the same provision of the constitution, to confer powers not judicial upon that court, and unless such authority is found in Section 21 of Article II of the Constitution, then Section 5137 et seq., General Code, are unconstitutional and void.
Article IV of the Constitution relates to the judicial power of the state, and so far as that power is concerned the several provisions of Article IV of the Constitution are controlling. If the authority to hear and determine an election contest were a *107 judicial and not a political power, that would be the end of this controversy, for in that event Section 21 of Article II would be in direct conflict with Section 1 of Article IV, which vests all judicial power in the court. Section 21 of Article II does not require the general assembly to confer this authority upon the courts, but it may provide for contests of election in various ways and before various authorities other than the courts of this state. The power \ to hear and determine election contests, however,^ being political and not judicial, the provision off Section 21 of Article II is not in conflict with Sec4 tion 1 of Article IV, for the reason that it authorizes the general assembly to confer such powers upon) other authorities than the courts of this state. If it is in conflict at all, it is in conflict because, under its provisions, the general assembly may confer such power upon the courts.
The provision of Section 1 of Article IV as amended September 3, 1912, does not differ in any respect that would affect this question from the provision of Section 1 of Article IV of the Constitution of 1851. Section 21 of Article II of the Constitution of 1851 is not affected in any way by the amendments adopted September 3, 1912. For over half a century these two sections have each been an integral part of the organic law of this state, and each has accomplished its own proper purposes without aid or hindrance from the other. There is nothing in the amended constitution that could in any way affect the former holdings of this court that they are not in conflict with each other. In the case of The State, ex rel., v. Marlow, 15 Ohio *108 St., 114,. it was held that the general assembly not only had the power to provide by law before what authority and in what manner the trial of contested elections should be conducted, but that it was a duty imposed upon the legislature by the constitution of the state. In the discussion of this question, Scott, J., in the opinion in that case, said: “In fulfillment of the solemn obligation thus imposed, we find upon the statute book, in the election laws of the state, jurisdiction specially conferred upon various tribunals to hear and determine contests in regard to the election of the different public officers, and the mode prescribed in which such contests shall be conducted. The courts of common pleas in the several counties are specially designated as the ‘authority’ before which elections of sheriffs, and the various other county officers shall be contested and by which such contests shall be heard and determined. The senate of the state is, by the same laws, invested with full jurisdiction to hear and determine any contest in regard to the election of governor, lieutenant-governor, judge of this court, or of the court of common pleas, and other state officers.”
In the case of The State, ex rel., v. Harmon, supra, White, J., said: “Under this provision, the selection of the authority for the trial of contested elections rests in the discretion of the general assembly; and the exercise of this discretion is not limited to a selection to be made from the courts established under the constitution. And although it is true the question now made did not arise in the case of The State ex rel. v. Marlow, yet we fully *109 concur with what is said in the opinion in that case, by Scott, J., on the subject. 15 Ohio St., 134.”
This question was also considered by this court in the cases of The State, ex rel. Ingerson, v. Berry, 14 Ohio St., 315, and Peck v. Weddell, 17 Ohio St., 271, and in both of these cases it was held that the general assembly had the authority, under the provisions of Section 21 of Article II, to determine by law before what authority and in what manner the trial of contested elections shall be conducted, and that the mode and method provided by the statute for such contest is exclusive.
It is true that the question as to the authority of the general assembly to confer upon the courts the power to hear contested election cases was not specifically presented in either of the cases above cited; on the contrary, the questions were:
1st. Has the general assembly power to confer upon any tribunals, other than the courts, authority to hear and determine election contests ?
2d. If the legislature has such authority, are the courts of the state still open to the aggrieved parties, or is the remedy provided by statute exclusive ?
Answering these questions, this court held, in the cases cited, that the general assembly, in the exercise of the power conferred upon it by Section 21 of Article II, was not limited to a selection to be made from the courts established under the constitution, and that where the general assembly provided by statute a method for contest of elections, that method was exclusive; The statutes then conferred *110 upon various tribunals, including the courts of this state, authority to hear and determine election contests. If there was then no conflict between Sections 21 of Article II and Section 1 of Article IV, there is none now, for Section 21 of Article II then authorized the general assembly to confer upon or withhold from the courts the power to hear and determine election contests, and Section 1 of Article IV then vested all judicial power in the courts.
The two provisions are readily reconcilable; they relate to entirely different subjects, one to judicial, the other to political, powers. One vests unconditionally and irrevocably, so far as the general assembly is concerned, all the judicial power of the state in the courts; the other provision confers upon the general assembly of Ohio the power to determine by law before what authority and in what ¡manner the trial of contested elections shall be con-i'ducted. That authority may or may not be the courts. The grant of power is general in its terms, absolutely unlimited and unqualified. The language is so plain and unambiguous that the framers of the constitution and the people of the state, when they adopted this provision, must have understood that that section would confer upon the general assembly j authority to select any of the courts of the state as the forum in which to try election contests, regardless of the fact that the courts were created by another provision of the constitution, solely and only for the purpose of administering the judicial power \of the state.
In this view of the case, it is not important *111 whether this proceeding to contest election is in the nature of an appeal or an original action; in either j case the constitutional authority of the general j assembly to confer jurisdiction upon the courts of appeals to hear and determine this contest of election is found in Section 21 of Article II of the f Constitution.
Nor is it necessary to inquire whether this court acquires appellate jurisdiction under the provisions of Section 2 of Article IV of the Constitution, or under the section of the statutes providing for the prosecution of error in this court to the judgment of the court of appeals in contest of election cases, for if the general assembly has authority to confer original jurisdiction upon the courts of this state to hear and determine such cases, it follows that, under the same provision of the constitution, it has the power also to confer appellate jurisdiction.
The conclusions reached upon these questions require the reversal of the judgment of the court of appeals of Henry county, dismissing the petition in the case of Dittmer v. Prentiss, No. 14813.
The case of Thompson v. Redington et al., No. 14798, presents further questions necessary to be considered in the determination of that case. It is contended that the petition is defective for the reasons that it contains no averments that the irregularities and errors complained of changed the result of the election, and no averment that, but for such irregularities and errors, the canvass of the vote would have shown the election of the contestor. The statute requires that the petition shall set forth *112 in brief and plain terms “upon what grounds the election is contested.” The petition in this case specifically sets forth several grounds of contest. It further avers that the contestor was duly and legally elected to this office. It necessarily follows, without further averment, that it is the claim of the contestor that these errors, mistakes and irregularities complained of, prevented a fair count of the ballots cast for him and his opponents, and that by reason thereof the wrong result was declared. Any further allegation in that respect would be unnecessary and redundant. It is doubtful if, under this statute, any averments are required, except the grounds upon which the election is contested, for this contest may be brought by any elector, as well as the person claiming to be elected to the office.
The judgment of the court of appeals in reference to the disputed ballots is fully sustained by the evidence before it. In Exhibit No. 1, the word “yes” is written in the space to the left of the name of Horace G. Redington. This of course is technically wrong, but there is no question as to the intention of the voter. Paragraph 9 of Section 5070, General Code, provides that no ballot shall be rejected for any technical error which does not make it impossible to determine the voter’s choice. .This statute requires that where the ballot is so marked that the intention of the voter is evident, the ballot' should be counted regardless of whether the mark indicating his intention is the mark the statute directs him to make or not.
On Exhibit No. 2, the cross mark is properly placed in the space to the left of the name of Horace *113 G. Redington. Another cross mark was placed to the left of the blank space, below all the names of the candidates for judge of common pleas court. The cross before the blank space does not authorize this ballot to be counted for any person, and, therefore, does not prevent the counting of the ballot for the candidate before whose name a cross mark is properly placed.
While there might be some difference of opinion as to whether the mark placed before the name of Horace G. Redington on Exhibit No. 3 is in fact a cross mark, yet a finding by the court of appeals that it is such a mark and prevents the ballot being counted for either candidate, because two have been voted for when there is but one judge to elect, would not be reversed by this court as an error of law. The question is really one of fact and-not of law, for it is conceded by counsel that if this is a cross mark the ballot cannot be counted for either candidate.
There remains, then, but the question of fact as to whether this is or is not a cross mark. In comparison with the strong, clear lines of the cross mark in front of the name of W. B. Thompson, there is a substantial difference, but, nevertheless, both lines of the cross mark are so plain on the original exhibit that if it were not for the plainer and heavier lines of the cross mark in front of the name of W. B. Thompson, no doubt whatever would arise.
The further claim is made by counsel for plaintiff in error that the ballot containing the cross mark *114 in front of the vacant space and the ballot containing the word “yes,” instead of a cross mark in the space to the left of the name of Horace G. Redington, should not have been counted for that candidate, for the reason that these are distinguishing marks that invalidate each of these ballots.
Before this question could be considered by the court, it would be necessary to show by some evidence that the ballots were so marked for the fraudulent and corrupt purpose of distinguishing them. This evidence of course might appear upon the face of the ballots themselves, but that is not necessarily true of the ballots in question in this case. The provisions of paragraph 9 of Section 5070 clearly indicate the legislative intent that the voter’s choice may be evidenced in some other way than as directed by the statute. Any other mark than the cross mark would be sufficient to distinguish the ballot from those marked according to the statute, and even the statutory marks might be used for the same purpose. That would depend entirely upon the intention of the voter, regardless of whether the statutory marks or other marks were used to distinguish the ballot cast by him. There being no evidence in this record that these ballots were so marked for the purpose of distinguishing them from other ballots cast at this election, it is unnecessary for this court to consider that question further.
The judgment of the court of appeals in the case of W. B. Thompson v. Horace G. Redington et al., No. 14798, is affirmed.
*115 The judgment of the court of appeals in the case of H. R. Dittmer v. P. C. Prentiss, No. 14813, is reversed, and the cause remanded to the court of appeals of Henry county for further proceedings according to law.

Judgments accordingly.

No. 14798. Nichols, C. J., Johnson, Newman, Jones and Matthias, JJ., concur. Wanamaker, J., not participating.
No. 14813. Johnson, Donahue, Wanamaicer, Jones and Matthias, JJ., concur.