OPINION
Defendant-appellant, Cecil C. Beasley, Jr., appeals the order of the Fayette County Court of Common Pleas authorizing the receiver's sale of JTC Partnership's interests. We affirm the decision of the trial court.
On June 15, 1998, plaintiff-appellee, Geoffrey Webster, obtained a judgment against Dalcoma Limited Partnership Four, Thomas Dalcoma, Richard Soyoul, and Cecil Beasley, Jr. In furtherance of Webster's efforts to collect upon his judgment, the trial court ordered sold certain real estate held by Dalcoma, Soyoul, and Beasley in foreclosure pursuant to a promissory note and mortgage held by Webster. The foreclosure sale did not fully satisfy Webster's judgment.
Webster then sought to execute upon the interests held by Dalcoma, Soyoul, and Beasley in the JTC Partnership. The JTC Partnership owned fifty percent of the Jeffersonville Travel Center, Limited ("Travel Center"). Hawkstone Associates, Inc. ("Hawkstone") was the owner of the other fifty percent interest in the Travel Center. Hawkstone is an entity wholly owned by Ron Wittekind.
On July 14, 1999, Webster applied to the trial court for a charging order and the appointment of a receiver for the JTC Partnership interests in order to collect upon his judgment against Dalcoma, Soyoul, and Beasley. On August 16, 1999, the trial court issued a charging order in favor of Webster and appointed Charles Lease as receiver of the JTC Partnership interests. The charging order directed the receiver to facilitate the sale of Dalcoma, Soyoul, and Beasley's interests in the JTC Partnership. JTC Partnership's fifty percent share of Travel Center was to be sold to Hawkstone, owner of the other fifty percent share in Travel Center.
The receiver recommended that the trial court accept Hawkstone's offer to purchase the JTC Partnership's interest with a few modifications. The receiver determined there was additional undistributed income which JTC Partnership partners would be entitled to from the Travel Center, Ltd. and therefore the sale price was renegotiated and increased. Wittekind, the owner of Hawkstone, also wanted a debit of $24,100, which sum represented a loan to Soyoul, to be set off from the purchase price.
On October 21, 1999, the receiver applied to the trial court to confirm the sale of JTC Partnership's interest to Hawkstone. The trial court issued notice to all interested parties and held a hearing regarding the sale to Hawkstone. The trial court issued an order authorizing the sale of JTC Partnership interests held by Dalcoma, Soyoul, and Beasley to Hawkstone for approximately $406,000.
Beasley appeals the decision of the trial court and raises four assignments of error challenging the receiver's authority to act, to sell partnership real estate, to set off debts, and the receiver's due diligence.
Assignment of Error No. 1:
 THE TRIAL COURT BELOW ERRED AS A MATTER OF LAW WHEN IT CONFIRMED THE RECEIVER'S OFFER AND ORDERED THE SALE OF JTC'S INTEREST IN JTC, LTD. BECAUSE THE RECEIVER HAD NO AUTHORITY TO ACT IN THE ABSENCE OF HAVING BEEN SWORN AND HAVING FAILED TO POST A BOND, AS REQUIRED BY OHIO REVISED CODE SECTION 2753.03.
 In his first assignment of error, Beasley contends the trial court erred as a matter of law when it confirmed the receiver's offer and ordered the sale of JTC Partnership's interest in the Travel Center. Beasley challenges the process by which the receiver was appointed, claiming that the process was deficient because the receiver neither took an oath of office nor posted a bond in an amount fixed by the court, as required by R.C. 2735.03.
The application for charging order and appointment of receiver states that this receiver was not appointed pursuant to R.C. 2735.03; rather, the receiver was appointed pursuant to R.C. 1775.27, which "requires neither an oath be sworn nor that any bond be imposed." Larson v.Larson (Oct. 13, 2000), Portage App. No. 2000-P-0023, unreported. See, also, Jamestown Village Condo v. Market Media (1994), 96 Ohio App.3d 678. Since there is no requirement that the receiver either be sworn to perform his duties faithfully nor that any bond be posted, we conclude that the receiver was properly appointed under R.C. 1775.27 and had legal authority to act. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 A RECEIVER DOS [sic] NOT HAVE THE AUTHORITY UNDER OHIO LAW TO SELL REAL ESTATE OWNED BY AN OHIO GENERAL PARTNERSHIP WHICH IS NOT A PARTY TO THE PROCEEDING IN ORDER TO SATISFY A JUDGMENT AGAINST THE GENERAL PARTNERS.
 In his second assignment of error, Beasley maintains a receiver does not have the authority under Ohio law to sell real estate owned by an Ohio general partnership that is not a party to the proceeding in order to satisfy a judgement against the general partners.
While it is true that a "partner may not assign his interest inparticular assets of the partnership," such as real estate, he may assign his interest in the partnership, that is, his right to share in the partnership's profits and surplus. Farmers State Bank Trust Co. v.Mikesell (1988), 51 Ohio App.3d 69, 77. (Emphasis added.) R.C. 1775.23
provides that "the property rights of a partner are his rights in specific partnership property, his interest in the partnership, and his right to participate in management." R.C. 1775.25 states that these interests are "personal property."
R.C. 1775.27 provides that creditors of individual debtor-partners may satisfy their claims on the partnership assets and make the "individual partner's interest subject to a charging order under circumstances that fall within the statutory design of R.C. 1775.27." Buckman v. Goldblatt
(1974), 39 Ohio App.2d 1, 4.
 (A) On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts, and inquiries which the debtor partner might have made, or which the circumstances of the case may require. (Emphasis added.)
R.C. 1775.27.
 In the instant matter, Webster was a judgment creditor of each individual debtor partner of the JTC Partnership. Thus, while the JTC Partnership was not a named party to the proceeding, by attempting to satisfy his claims from each individual partner's interest, Dalcoma's 33.33 percent, Soyoul's 33.33 percent, and Beasley's 33.33 percent, Webster subjected one hundred percent of JTC Partnership's interest in the Travel Center to the charging order without naming the JTC Partnership a party to the proceeding. Therefore, one hundred percent of the rights in specific partnership property, the interest in the partnership, and the right to participate in management, which are all personal property to Dalcoma, Soyoul, and Beasley, were to be sold per the charging order to satisfy Webster's judgement debt against each individual partner.
Beasley further contends that "nothing in the Ohio Revised Code permits a receiver to sell a debtor partner's share in order to satisfy a judgment against the partner individually." However, it is apparent that R.C. 1775.27 anticipates and permits the sale of an individual partner's partnership interest. R.C. 1775.27(B) states that the "interest charged may be redeemed at any time before foreclosure, or in the case of a salebeing directed by the court may be purchased without thereby causing a dissolution." (Emphasis added.)
In this matter, it just so happened that all of the partners' individual interests in the partnership, not the partnership's interest in the real estate, were charged and sold at the same time, and to the same entity, in order to satisfy the judgment. Therefore, it only appears that JTC Partnership's real estate was sold to Hawkstone instead of one hundred percent of the JTC Partership's interests in the Travel Center being sold.
We conclude that the receiver did have the authority under R.C. 1775.27
to sell the interests of the JTC Partnership, which was not a party to the proceeding, in order to satisfy the judgment against all the individual partners. Therefore, the second assignment of error is overruled.
Assignment of Error No. 3:
 THE RECEIVER WAS WITHOUT AUTHORITY TO OFFSET PERSONAL DEBTS OF AN INDIVIDUAL PARTNER FROM THE PROCEEDS OF THE SALE OF JTC'S INTEREST IN JTC, LTD.
 Beasley argues in his third assignment of error that the receiver was without authority to set off the personal debts of an individual partner from the proceeds of the sale of JTC Partnership's interest in the Travel Center.
In its November 17, 1999 judgment entry, the trial court confirmed and approved the offer to purchase and authorized the receiver to sell Dalcoma, Soyoul, and Beasley's interests in JTC Partnership. The trial court approved the sale agreement and found "the total purchase price of JTC Partnership's interest in Jeffersonville Travel Center, Ltd. shall be $430,559, less a debit of $24,100, which sum represents a loan to Richard Soyoul, a partner of JTC Partnership from CCC Oil Company which debit amount shall be paid by Hawkstone Associates, Inc., an entity affiliated with CCC Oil Co., to CCC Oil Co. at the time of closing of this purchase."
Setoff is an equitable concept, "and occurs when two parties, each of whom are indebted to the other, extinguish their unrelated cross-demands against each other, so as to leave one party entirely indebted to the other." In re Rehab Project, Inc. (1999), 238 B.R. 363, 370. Setoffs are generally favored, but are not automatically permitted, and "allowance of setoff is within discretion of trial court and its decision on the matter will not be set aside except for clear abuse of discretion." Melamed v. Lake County Nat. Bank (C.A.6, 1984),727 F.2d 1399, 1404. In order to have a clear abuse of discretion, "the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias." Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87.
If the CCC Oil Co. loan obligation, though in the name of Soyoul, was in fact for the benefit of JTC Partnership, it would not be a case of a separate obligation of a different party. See Miller and Co. v. Florer
(1864), 15 Ohio St. 148, 153. The record reveals that Soyoul received the loan from Wittekind through his company, CCC Oil, and then "took that money and lent it back to JTC Partnership to complete the process of filling the property up to proper grade level." Wittekind is the sole owner of Hawkstone and CCC Oil. Since there is evidence that the JTC Partnership was the beneficiary of the Soyoul debt, there is no good reason "why one claim should not be applied to compensate the other."Miller, 15 Ohio St. at 153.
In this case, all the partners in the JTC Partnership were jointly and severally liable to Webster. Under the charging order, in an attempt by Webster to fully collect upon his judgement, one hundred percent of the interests in the JTC Partnership were sold to Hawkstone. In this scenario, where Hawkstone and CCC Oil Co. are affiliated companies and the debt Soyoul owes CCC Oil Co. was for the benefit of the JTC Partnership, the trial court did not abuse its discretion by applying part of the proceeds to set off the purchase price when JTC Partnership was the beneficiary of the loan being set off. Since the receiver had the authorization of the trial court to make the setoff, and the trial court was not arbitrary or capricious in ordering the setoff, the third assignment of error is overruled.
Assignment of Error No. 4:
 THE RECEIVER FAILED TO PERFORM HIS RESPONSIBILITIES WITH DUE DILIGENCE AND WITHOUT REGARD TO TRANSACTING THE SALE AT ARM'S LENGTH FROM THE BUYER.
 In his fourth assignment of error, appellant asserts the receiver failed to perform his responsibilities with due diligence and without regard to transacting the sale at arm's length from the buyer.
A receiver appointed by a court "is responsible for the exercise of good faith and reasonable diligence in the discharge of his duties."Lafayette Bank v. Buckingham (1861), 12 Ohio St. 419, 425. Reasonable diligence is defined as, "the diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." Black's Law Dictionary (7 Ed.Rev. 1999) 468.
Since a receiver is an officer of the court appointing him, "every act by him is responsive to an order of the court appointing him; he has no other power, save that of the statute and order of the court." Osbornev. Columbus (1910), 21 Ohio Dec. 744, 745. The receiver performed his responsibilities with due diligence because he did what he was directed to do by the court. The receiver had the legal authority of the court to act under R.C. 1775.27. The court authorized the sale of the JTC Partnership's interest in Travel Center to Hawkstone. The receiver had authorization from the court to set off the personal debt of Soyoul. The receiver and the buyer, Hawkstone, transacted the sale at arms length.
Hawkstone and Dalcoma "negotiated a purchase price" for the JTC Partnership at $300,000, before the appointment of the receiver. The offer was "re-evaluated" and the purchase price was increased to $400,000. At that stage in negotiations the receiver was appointed, and through negotiations between the receiver and Hawkstone the price was increased to $430,559, less a debit of $24,100, which equaled $406,459. The trial court confirmed the sale at this price based on the evidence. The admission and exclusion of evidence "as to the value of the land and other related subjects rests to a large extent in the discretion of the trial court, and, where it is apparent that such court did not abuse its discretion * * * a reviewing court will not interfere." Turnpike Comm v.Ellis (1955), 164 Ohio St. 377, syllabus.
An arm's length sale is typically a transaction negotiated "between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power." Black's Law Dictionary (7 Ed.Rev. 1999) 102. The mechanics of the transaction, such as negotiating face to face, knowing the sellers' reasons for selling, and knowing the sellers identity before completion of the transaction "have little or no bearing on whether the sale was at arm's length." Walters v. Knox County Boardof Revision (1989), 47 Ohio St.3d 23, 26.
Hawkstone entered into the negotiations with Dalcoma and then with the receiver voluntarily. There were negotiations and the sale price was raised even though Hawkstone was the only willing purchaser. The parties acted in their own self interests and had equal bargaining power. Therefore, the fourth assignment of error is overruled.
YOUNG, P.J., and WALSH, J., concur.